152 So.2d 235 (1963)
Miss Margie Rutledge BURTON
v.
LUMBERMENS MUTUAL CASUALTY COMPANY and The Ohio Casualty Insurance Company.
No. 946.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1963.
Rehearing Denied May 6, 1963.
Certiorari Refused June 28, 1963.
Hammett, Leake & Hammett, New Orleans, for Lumbermens Mutual Casualty Company, defendant and appellant.
Henican, James & Cleveland, C. Ellis Henican, Jr., New Orleans, for Miss Margie Rutledge Burton, plaintiff and appellee.
Porteous & Johnson, William A. Porteous, Jr., Benjamin C. Toledano, New Orleans, for The Ohio Casualty Insurance Company, defendant and appellee.
Before REGAN, YARRUT and CHASEZ, JJ.
*236 REGAN, Judge.
Plaintiff, Margie R. Burton, was involved in an automobile accident near Lumberton, Mississippi and as a result thereof, she was named defendant in a personal injury action instituted in a federal district court of Mississippi by Mr. and Mrs. Roe who alleged that their injuries resulted from her negligence. When this accident occurred, plaintiff insists that she was driving a vehicle which she had acquired in New Orleans from Charles Landreth with the understanding that she would purchase the car from him if she was satisfied with its general performance after she reached her home in North Carolina. Plaintiff has instituted this suit requesting the rendition of a declaratory judgment to determine whether Landreth's insurer, Lumbermens Mutual Casualty Company, or her own insurer, The Ohio Casualty Insurance Company, is responsible for providing a defense on her behalf to the suit filed by Mr. and Mrs. Roe in the federal district court in Mississippi. Plaintiff further prayed for the recovery of costs and attorney's fees expended by her in the prosecution of this suit.
Defendant, The Ohio Insurance Company, answered and asserted that the vehicle operated by the plaintiff was actually owned by Charles Landreth; therefore, under the terms of the policy issued by Lumbermens Mutual Casualty Company, Landreth's insurer, plaintiff was an "additional insured", and Lumbermens was primarily liable to provide the defense to the suit in Mississippi and to respond to any judgment rendered, the amount of which was within the policy limits of Lumbermens' contract of insurance.
Defendant, Lumbermens, answered and denied any liability whatsoever, asserting that plaintiff herein was the actual owner of the vehicle when the accident occurred, since Landreth had transferred to her the title to the vehicle. It therefore maintained that the driver's insured, Ohio Insurance Company, was liable.
From a judgment declaring that Lumbermens Mutual Casualty Company was liable for the defense of the federal court action and to pay the amount of any judgment, within its policy limits, rendered in that suit, and further condemning Lumbermens Mutual to reimburse Ohio Casualty Insurance Company for costs and attorney's fees incurred to date in defending the federal court suit, Lumbermens has prosecuted this appeal. Plaintiff has answered the appeal, insisting that it is frivolous and has been prosecuted merely for the purpose of delay; therefore, this court should impose penalties therefor against the defendant cast.
The record reveals that in July of 1960, plaintiff, a piano teacher who resided in Reedsville, North Carolina, came to New Orleans to visit Mr. and Mrs. Charles Landreth, who had been very close friends of hers for many years. At the time of this visit, Landreth, a vice-president of the Sealtest Corporation, was planning to assume a similar executive position with the Carling Brewing Company, which would require him to reside in Atlanta, Georgia.
In the course of plaintiff's visit, the Landreths discussed in her presence their impending move to Atlanta, and also a desire to sell their two cars, one of which was a 1955 Oldsmobile. During this discussion plaintiff learned that they were asking $950 for the vehicle, and she expressed an interest in the purchase thereof. Landreth endeavored to dissuade her by emphasizing that the vehicle was five years old. He did not wish to feel responsible to her if the automobile, then in good condtion, subsequently developed defects which may usually be anticipated in a car of that age.
Plaintiff nevertheless persisted in her desire to buy the vehicle since the price was attractive, and finally she and Landreth agreed that she could drive the vehicle to her home in North Carolina and then decide if she wished to retain the car. This arrangement was agreed to so that the plaintiff, in actually driving the vehicle, *237 would possess an opportunity to observe the gasoline and oil consumption thereof and to generally evaluate its over-all performance. The Landreths, in addition to discussing the sale of the car, were also discussing the expenses involved in connection with their change of residence to Atlanta, and at this point plaintiff advanced $150 on account of the purchase thereof. It was then agreed that if she desired to retain the vehicle, she would pay Landreth an additional $800 and if she did not want it, he would return the amount which she had advanced.
If it so happened that plaintiff desired to return the car, the Landreths, in any event, had already planned to visit relatives in the general vicinity of plaintiff's home in North Carolina, at which time they could easily pick the vehicle up; the arrangement would then be that Mrs. Landreth would drive the rejected vehicle back to Atlanta, and Landreth would follow in their other car, or vice versa.
Landreth, who obtained insurance on his personal automobile through his employer, the Sealtest Corporation, testified that he spoke with Howard Mitchler, an employee of Sealtest who handled insurance matters for the company and its employees, and was assured by him that the plaintiff would be covered under his policy when she drove the car to North Carolina.
On August 1, 1960, Landreth transferred his Louisiana certificate of title to the plaintiff and gave her the document. This was done, he explained, so that she would not encounter any difficulty in driving an automobile for which she possessed no proof of ownership or apparent authority to drive, and also to facilitate transfer of title in North Carolina in the event she decided to retain the vehicle.
That same day she drove away from New Orleans in the Oldsmobile and was later involved in an accident near Lumberton, Mississippi. She telephoned the Landreths, who drove to Lumberton that same day to bring her back to their home in New Orleans, where more extensive medical treatment was available.
Landreth also notified his insurer of the accident on the day it occurred. A telephone report form prepared by one of Lumbermens' agents read:
"Description of AccidentInsured's (Landreth's) car driven by Margie Burton (intended buyer), was on highway 11 * * *." (First parenthesized material ours.)
Predicated on the foregoing evidence, the trial court reasoned that the vehicle, when the accident occurred, was owned by Landreth since the full agreement between plaintiff and the owner revealed that she would signify her acceptance or rejection of the offer of sale only after she had test driven the vehicle. Therefore, the owner's insurer was primarily liable under the "Omnibus Clause" contained in the policy.
Counsel for Lumbermens asserts that a completed contract of sale is evidenced by the transfer of title to plaintiff, signed by Landreth, the pertinent part of which reads:
"For value received, I/we hereby assign, transfer and convey unto Miss Margie Burton * * * the motor vehicle described on the reverse side hereof * * *."
Counsel argues that parol evidence cannot be introduced to vary the terms of this written contract of sale, and cites in support thereof LSA-C.C. 2276, which reads:
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
We are of the opinion that this contention is without merit, because the written instrument does not fully incorporate the terms of the contract entered into between the parties. It does not recite the consideration *238 to be paid for the vehicle, nor does it contain evidence in itself of the acceptance thereof on the part of the vendee.
In Burk v. Livingston Parish School Board,[1] the organ for the Supreme Court, in discussing the parol evidence rule, quoted the following paragraphs and made them part of the ratio decidendi of its decision.
"In 20 American Jurisprudence, Evidence, Sec. 1106, we find the following language:
"`There may be writings relating to the contract between the parties which do not embody the contract itself. In such a case, where the contract rests upon an oral agreement, parol evidence is admissible as to the terms of the contract notwithstanding the writings.
"`Before the rule that no parol evidence can be received to vary the stipulations of a writing alleged to be a contract between the parties to a cause on trial can apply, the writing must be shown to be their contract. An unaccepted written statement by one party to an oral contract, stating his version of the agreement, does not reduce the contract to writing in favor of the other person so as to preclude the writer from giving oral evidence of the terms of the contract.'"
We are of the opinion that the document counsel relies on to exclude parol evidence is not in fact the contract; therefore, parol is admissible to establish the actual agreement existing between the parties.
We are impressed by the witnesses who appeared herein, and are convinced that they testified truthfully to the effect that the plaintiff possessed the opportunity to test drive the vehicle from New Orleans to North Carolina before the sale would be consummated. This testimony is substantiated by the fact that Landreth telephoned Mitchler, an employee who handled insurance for Sealtest, to make sure that this vehicle would be fully insured in the course of being driven to North Carolina; and in addition thereto, by the fact that Landreth on the day of the accident related to his insurer when he reported the collision that he was the owner and that the plaintiff was the "intended buyer".
The agreement between plaintiff and Landreth therefore did not mature into a sale before the accident occurred since the plaintiff had never accepted the vehicle. The right to later signify acceptance after testing the object of the sale is specifically authorized by virtue of the rationale appearing in LSA-C.C. 2460, which reads:
"Things, of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer be satisfied with the trial, which is a kind of suspensive condition of the sale."
Since we are of the opinion that Landreth owned the car when the accident occurred, we necessarily conclude that the trial court properly determined that Lumbermens Mutual Casualty Company was obligated to defend the Mississippi action, and is liable for any judgment rendered therein within the monetary limits of its contract of insurance.
Defendant Lumbermens' final specification of error was that the trial court assessed them with attorney's fees and costs incurred by plaintiff's insurer, The Ohio Casualty Company, in defending the federal litigation to date. At this point it should be mentioned that plaintiff herein was found negligent after a trial in the federal court of Mississippi; however, a new trial has been granted therein, limiting the litigants to re-try the issue of quantum. A judgment for $15,000 was rendered against the plaintiff as a result of the first trial.
In effect, the trial court has rendered a money judgment in ordering *239 Lumbermens to reimburse plaintiff's insurer for the costs incurred in litigating the suit in Mississippi. We do not believe that the scope of the declaratory judgment act encompasses the authority to render money judgments in view of the rationale of LSA-C.C.P. Art. 1871 which provides in part:
"Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. * * *"
And LSA-C.C.P. Art. 1878 provides in part:
"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."
While this judgment in determining which insurer is primarily liable, may later form the basis of an action to recover attorney's fees, etc. we do not think that the relief was properly granted in this suit for a declaratory judgment. But, assuming arguendo that a monetary judgment could be rendered herein, there is absolutely nothing in the record to establish any liability on the part of Lumbermens to plaintiff's insurer, or which reveals that the plaintiff's insurer was not obligated by the terms of its policy to provide a defense for the plaintiff.
From the foregoing discussion, it is quite obvious that the plaintiff's request for the imposition of penalties for the prosecution of a frivolous appeal by the defendant is wholly without merit, since very serious legal issues were posed for our consideration and resolution.
For the reasons assigned, the judgment appealed from is reversed insofar as it awards the plaintiffs, Margie Burton and The Ohio Casualty Company, costs and attorney's fees expended in defense of the federal court action against Lumbermens Mutual Casualty Company; in all other respects, the judgment appealed from is affirmed. Each litigant should bear its own costs of this appeal.
Reversed in part, affirmed in part.
NOTES
[1] 215 La. 143, 39 So.2d 891.