KLAPPS (ELLA) and another, Plaintiffs and Respondents, v. AMERICAN INSURANCE COMPANY, Defendant and Appellant: MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY and another, Defendants and Respondents: KLAPPS (ROBERT C.), Impleaded Defendant and Respondent.

KRAUSE, Plaintiff and Respondent, v. KLAPPS (ROBERT C.), Defendant and Respondent: AMERICAN INSURANCE COMPANY, Defendant and Appellant: MITCHELL and another, Impleaded Defendants and Respondents.

MITCHELL, Plaintiff and Respondent, v. KLAPPS (ROBERT C.), Defendant and Respondent: AMERICAN INSURANCE COMPANY, Defendant and Appellant.

*February 4—March 2, 1965.*

For the appellant there were briefs by *Cornelisen, Denissen, Kranzush & Kuehn,* and oral argument by *David J. Condon,* all of Green Bay.

For the respondents there was a brief by *Joyce & Goggin* of Neenah, for Ella Klapps, and *W. T. Kuchenberg* and *Harry P. Hoeffel,* both of Appleton, for the Milwaukee Automobile Mutual Insurance Company and Patricia Mitchell, and *Harry P. Hoeffel,* for Arthur H. Krause and Patricia Mitchell, and oral argument by *Mr. Hoeffel.*

WILKIE, J. There are two issues presented on this appeal:

First, have plaintiffs-respondents met the burden of proving the existence of an insurance policy?

Second, assuming the burden was met, did the insurance policy issued to Winnebagoland Motors cover the car driven by Klapps at the time of the accident?

*Existence of Insurance Policy.*

The complaint in each of the three actions alleges on information and belief that prior to February 28, 1961, appellant American had issued an insurance policy to Winnebagoland Motors covering the 1953 Plymouth, that Klapps was operating the car with the permission of Winnebagoland, and that the policy was in full force and effect at the time of the collision. By its answer (in the Krause action, which is substantially the same in the others) appellant American admitted issuing the policy prior to February 28th, and alleged that the policy was "subject to all of the terms, conditions, limitations and exclusions as contained therein." Appellant denied that the policy was in full force and effect at the time of the accident. The answer further recited:

"This answering defendant further alleges the true facts to be that at the time of the said collision the said 1953 Plymouth 2 door automobile was jointly owned by the said Robert C. Klapps and his father, Reuben Klapps; that the said Winnebagoland Motors, Inc., was not the owner of said vehicle, and the said automobile was not covered by any policy of insurance then in existence by and between the said Winnebagoland Motors, Inc., and this answering defendant at the time of said collision."

Appellant contends that by failing to introduce the policy or any testimony concerning coverage into evidence respondents failed to sustain their burden of proof in regard to the issue raised by the pleadings of whether or not there was an insurance policy in effect at the time of the collision.

But the pleadings do not raise an issue as to the existence of a policy. The answers clearly raise a policy defense by denying that there was coverage at the time of the accident because the car was then owned by the Klapps, not Winne-

bagoland Motors. Under the pleadings, and after a trial on this precise policy defense, it would be farfetched indeed to support appellant's contention that the very existence of the alleged policy was in dispute.

In effect, we conclude that the existence of the policy was conceded and the trial was properly limited to the particular coverage question raised by American.

### Ownership of the Plymouth.

The issue of whether American's policy covered the 1953 Plymouth at the time of the accident hinges on the underlying question of whether ownership of the vehicle had passed by then from Winnebagoland Motors to Robert Klapps and his father.

Ownership in property passes according to the intent of the parties.[1]

Although all the conduct of the parties in this case does not support the plaintiffs'-respondents' position, we are satisfied that the trial court's determination that ownership remained in Winnebagoland Motors as of the time of the accident is not against the great weight and clear preponderance of the evidence.[2]

The most-significant fact in arriving at the intention of the parties is the accumulation of evidence supporting the proposition that the consummation of the sale was conditional upon obtaining Reuben Klapp's signature on the contract. (1) Young Klapps testified to this effect. (2) Testimony of Winnebagoland's salesman Joseph Merkes, taken at an adverse examination, was read into the record at the trial. When asked whether there would have been a

---

[1] Sec. 121.18, Stats. See also *Liner v. Mittelstadt* (1950), 257 Wis. 70, 42 N. W. (2d) 504.

[2] *Guinther v. Schucht*, ante, p. 97, 131 N. W. (2d) 861; *Tiedeman v. Middleton* (1964), 25 Wis. (2d) 443, 130 N. W. (2d) 783; *Estate of Beat* (1964), 25 Wis. (2d) 315, 130 N. W. (2d) 739.

deal even if Klapp's father refused to sign, Merkes in essence said that he did not know what would have happened. Merkes' uncertainty at least indicates his doubt as to whether a contract was entered into on February 28th, since if there was a valid contract it would not have been necessary for Reuben to join in the signing. (3) That Winnebagoland placed major reliance on making an adult a party to such a contract with a minor is revealed by the fact that Reuben cosigned on two previous occasions when Robert purchased automobiles from Winnebagoland. (4) Although Robert Klapps signed a conditional sales contract and a car-order form on February 28th, he and his father both signed identical papers (even as to the date) on March 3d. If the earlier contract was in force, the only conceivable justification for the re-execution would be to bind Reuben Klapps as a guarantor. But this could have been accomplished by having him sign either the original contract, or if that was somehow misplaced, the original copy. The second signing not only indicates that the parties did not mean to be bound on February 28th, but also tends to support the trial court's decision that the contract was actually contingent upon Reuben's signing. (5) At the time of the collision, the car carried dealer's license plates. It would be persuasive evidence that Klapps intended to take title to the car on February 28th if he had applied for his own plates on that day as required by law.[3] That he failed to apply

---

[3] Sec. 341.04, Stats. "PENALTY FOR OPERATING UNREGISTERED OR IMPROPERLY REGISTERED VEHICLE. (1) It is unlawful for any person to operate . . . any motor vehicle, . . . for which a registration fee is specifically prescribed unless at the time of operation the vehicle in question either is registered in this state or is exempt from registration.

"(a) A vehicle may be operated by a private person within a period of 15 days after the date of purchase of such vehicle by such private person . . . if application for registration and certificate of title has been made."

until March 2d or 3d, while not being conclusive evidence of exactly when the transaction was completed, at least casts doubt as to whether title passed on February 28th.

Appellant relies on the fact that Klapps described himself as the owner of the Plymouth in the insurance application he filled out February 28th. A similar contention was met in *Liner v. Mittelstadt*,[4] where this court said:

"In our view this shows no more than precaution on Hinshaw's part that there should be insurance which would go into effect immediately upon his becoming the owner; it does not show that he became owner [at one time] . . . rather than at some other time."

However, if any inference is to be drawn from this signed application the trial court certainly could have reasoned that since Klapps realized the policy would not become effective until 12:01 a. m. on March 1st, it would be doubtful that he would intend to take title on February 28th to an automobile which he knew would not be covered by insurance until the next day.

The fact that Klapps drove the car home has little bearing on the question of ownership since it was customary for Winnebagoland to permit potential customers to try out vehicles. The fact that Klapps signed the title to the 1951 Studebaker over to Winnebagoland on February 28th is evidence that the contract was entered into on that date. However, this is countered by the fact that the agreed cash payment was not made until March 3d.

Considered as a whole, the great weight and clear preponderance of the evidence points inescapably to the conclusion that the ownership of the Plymouth had not changed hands at the time the accident occurred on February 28th. It is thus unnecessary to consider whether the trial court was

---

[4] *Supra,* footnote 1, at page 77.

correct in determining that the deal was actually closed March 3d.

Because of our assessment of the evidence received at the trial on the question of ownership it is not necessary for us to consider in any way the certified copy of the motor vehicle title submitted to this court with the request that we take judicial notice of the document in support of the position taken by plaintiffs-respondents.

*By the Court.*—Orders affirmed.