[No. 39473.    Department Two.    September 26, 1968.]

DARRYL BEATTY, *Individually and as Guardian, Respondent,* v. WESTERN PACIFIC INSURANCE COMPANY, *Appellant.*\*

*\*Reported in 445 P.2d 325.

*Ferguson & Burdell, W. Wesselhoeft,* and *William E. Kuhn,* for appellant.

*Guttormsen, Scholfield, Willits & Ager,* by *Frank D. Howard* and *Shannon Stafford,* for respondent.

HAMILTON, J.—This is an appeal from a summary judgment entered in favor of plaintiff (respondent) and against defendant (appellant), Western Pacific Insurance Company. A question of insurance coverage is presented.

The circumstances giving rise to the question rotate about the sale of an old automobile. In early May, 1965, one Eugene F. Sutliff placed an advertisement in a newspaper offering to sell his 1952 automobile for $75. On May 9th, James R. Scott, then 19 years of age and a stranger to Sutliff, read the advertisement and telephoned Sutliff to ascertain if the car was in good shape and available for inspection. Upon receiving an affirmative response, Scott, together with a friend, went to Sutliff's home, inspected the

car, drove it around the block, and asked if Sutliff would sell it on time, *i.e.*, $35 down and the $40 balance in 2 weeks. Sutliff agreed, whereupon Scott paid him the $35, accepted a receipt along with the keys to the vehicle, and drove away. Sutliff retained possession of the certificate of title, and the certificate of registration indicating Sutliff as the registered owner remained in the automobile. The receipt which Sutliff wrote and gave Scott reads as follows:

"May 9. Received from James R. Scott, $35.00 now and balance to be paid two weeks. Total sum, $75.00. Eugene Sutliffe."

At the time of the transaction Sutliff carried a policy of liability insurance with appellant insurance company upon which the 1952 Ford was listed as one of the described automobiles. On the day following the transaction, May 10th, Sutliff telephoned the appointed agent of appellant, informed that agent of the situation, and asked what to do with respect to continuing coverage. The agent advised that he retain his coverage until the balance due from Scott was paid and title to the vehicle was delivered. This was done.

On May 11, Scott, while driving the car, struck and injured the minor child of respondent. The accident was investigated and reported with Sutliff being listed as the registered and legal owner of the vehicle. Scott, however, told the police he was buying the car. Scott did not advise Sutliff of the accident because he considered it "none of his business." Sutliff learned of the accident through a newspaper, but took no action. In the meantime Scott continued to use the car as he saw fit and told friends it was his.

Around May 15th, Scott called Sutliff and complained about the transmission in the car. Sutliff went to Scott's home and the two drove around in the car. In response to Scott's inquiry as to what could be done about it, Sutliff said:

"You gave me a down payment on the car. If you want to, I will just take the car back, but I am not going to give you back the down payment."

Scott, rather than risk the loss of his $35, kept the car and, on May 23rd, went to Sutliff's home and paid the balance due. At this time Sutliff signed and delivered the certificate of title to Scott and, at Scott's request, a hand-written document which reads:

Bill of Sale

This is to signify the sale of one 1952 Ford, two door, motor I.D. B2RM111747 to James R. Scott, 4463 Wood-land Park Pl. for the sum of seventy-five dollars on the 23rd day of May May [sic] 1965. Paid in Full

seller - [signed]  Eugene F. Sutliff

buyer  - [signed]  James R. Scott

Sutliff notified appellant's agent that the transaction had been completed and subsequently received an endorsement deleting the automobile from his policy effective as of May 24th.

In September, 1965, respondent instituted a suit against Scott for injuries to his child caused by the accident. Scott's attorney tendered the defense of the case to appellant. The tender was declined. Trial of the action resulted in a sub-stantial judgment against Scott. Respondent then initiated this action against appellant, contending that at the time of the accident Sutliff was the legal owner of the vehicle, that Scott was driving the vehicle with Sutliff's permission and that appellant was obligated under the omnibus clause of Sutliff's liability policy to pay the judgment rendered in the previous suit.

Both parties filed motions for summary judgment. The trial court granted respondent's motion.

In granting respondent's motion for summary judgment, and as a prelude to imposing liability on appellant, under the omnibus clause, the trial court asserted that there was no material dispute in the facts and that as a matter of law the transaction between Sutliff and Scott on May 9th did not amount to a conditional sale. In so ruling, the trial court did not undertake to characterize or categorize the transaction.

We agree with the trial court that there is no material dispute of fact concerning what Sutliff and Scott said and

534

did on May 9th or during the interval between then and May 23rd, the date when title to the vehicle was delivered. We cannot agree, however, with the trial court's conclusion that the transaction did not amount to or was not tantamount to a conditional sale.

■ Speaking in a somewhat different context, yet to the point of the characteristics of a conditional sale, we said in *Hafer v. Spaeth,* 22 Wn.2d 378, 386, 156 P.2d 408 (1945):

In almost all jurisdictions a conditional sale is held to be a sale in which the vendee receives the possession and right of use of the goods sold, but the transfer of the title to the vendee is made dependent upon the performance of some condition or the happening of some contingency, usually the full payment of the purchase price. 47 Am. Jur. 7, Sales, § 828. This court is in accord with that concept. *Inland Finance Co. v. Inland Motor Car Co.,* 125 Wash. 301, 216 Pac. 14. This court has also clearly explained the functions of a conditional sales contract and has defined the character of relationship existing between the parties to such instrument. In *Lyon v. Nourse,* 104 Wash. 309, 176 Pac. 359, and in *Hughbanks, Inc. v. Gourley,* 12 Wn. (2d) 44, 120 P. (2d) 523, 138 A. L. R. 658, we declared that it is not the office of a conditional bill of sale to secure a loan of money, but, rather, only to permit an owner of personal property to make a bona fide sale on credit, reserving title in himself for security until the purchase price is fully paid.

*See also* Annot., 175 A.L.R. 1366 (1948) wherein the annotator summarizes the general rule as follows, at 1368:

As indicated in the earlier annotions, one of the essential elements and distinguishing features of a conditional sale is the reservation of title in the seller until the performance of some condition or the happening of some contingency, usually the full payment of the purchase price.

As between the parties a contract or agreement of conditional sale need not be expressed in any set form or language. *Lundberg v. Kitsap Cy. Bank,* 79 Wash. 75, 139 Pac. 769 (1914). It may be partly in writing and partly oral, or it may be entirely oral. It is the intention of the parties to

the transaction which controls. *Gaffney v. O'Leary,* 155 Wash. 171, 283 Pac. 1091 (1929).

In the instant case, the undisputed facts, as outlined above, can lead to but one logical conclusion—that Sutliff and Scott did intend to effect a conditional sale or an arrangement tantamount thereto. In this respect, it is beyond question that Sutliff intended to sell and Scott intended to buy the automobile. It is further perfectly clear that they undertook and intended to accomplish their respective purposes by a bona fide sale on credit, with unrestricted possession, dominion and use of the vehicle actually and immediately passing to Scott with delivery, and with Sutliff retaining title and registration in his name solely as security until the purchase price was fully paid. *Cf. United Fire & Cas. Co. v. Perez,* 161 Colo. 31, 419 P.2d 663 (1966).

The trial court erred in ruling that the transaction was something less than a conditional sale.

Despite the character of the transaction, respondent nevertheless contends that the particular factual situation presented in this case renders appellant liable under the omnibus clause contained in Sutliff's liability policy, which provides:

> The following are Insureds under Part 1:
> (a)  with respect to the owned automobile,
>       . . . .
>       (a)  any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

Respondent predicates this contention upon the grounds that Sutliff initially, and until sometime after the date of the accident, retained both the certificate of title and the registration certificate to the vehicle in his name, thereby

failing to comply with the provisions of RCW 46.12.010,[1] 46.12.100,[2] and 46.12.110[3] as they then pertained to the du-

[1]"RCW 46.12.010 Certificates required to operate and sell vehicles. It shall be unlawful for any person to operate any vehicle in this state under a certificate of license registration of this state without securing and having in full force and effect a certificate of ownership therefor and it shall further be unlawful for any person to sell or transfer any vehicle without complying with all the provisions of this chapter relating to certificates of ownership and license registration of vehicles: *Provided,* That the provisions of this section relative to the sale of vehicles shall not apply to the first sale of vehicles by manufacturers and dealers: *Provided Further,* That nothing in this title shall be construed to prevent any person entitled thereto from securing a certificate of ownership upon a vehicle without securing a certificate of license registration and vehicle license plates, when, in the judgment of the director of licenses, it is proper to do so."

Amended by laws of 1967, ch. 32 § 6 and Laws of 1967, ch. 140 § 1.

[2]"RCW 46.12.100 Sale or transfer of vehicle—Assignment of certificate of ownership—Penalty. In the event of the sale or other transfer to a new registered owner of any vehicle for which a certificate of ownership and a certificate of license registration have been issued, the registered and legal owners shall endorse upon the back of the certificate of ownership an assignment thereof in form printed thereon, and shall record thereon name of purchaser and date of transaction and shall deliver the same to the purchaser or transferee at the time of the delivery to him of the vehicle. Delivery of a certificate of title to a purchaser or his agent without at the same time recording the name of the purchaser and the date of the transaction on the assignment form shall constitute a misdemeanor."

Repealed by Laws of 1967, ch. 140 § 10.

[3]"RCW 46.12.110 Duty of purchaser or transferee other than dealer —Penalty. The purchaser or transferee, unless such person is a dealer, shall within fifteen days thereafter apply to the director or his duly authorized agent for the reissue of such certificate of ownership and transfer of license registration. Such application shall be made on forms prescribed by the director and accompanied by a fee of one dollar. Upon receipt of such application, accompanied by the endorsed certificate of ownership and such other documentary evidence as is deemed necessary, the director shall, if the application is in order and if all provisions relating to certificates of ownership and license registration have been complied with, issue a new certificate of ownership and new certificate of license registration as in the case of an original issue and shall transmit the fees together with an itemized detailed report to the state treasurer, to be deposited in the motor vehicle fund. If the purchaser or transferee fails or neglects to transfer such certificate of ownership and license registration within fifteen days after date of delivery of the vehicle to him he shall be guilty of a misdemeanor and in addition thereto he shall on making application for transfer be

ties of parties to a vehicular sales transaction with respect to such certificates. Because of the lack of compliance with these statutes, respondent asserts Sutliff at all times concerned legally remained the "owner" of the vehicle for all pertinent purposes within the framework of the liability policy as well as within the statutory definitions found in RCW 46.04.270,[4] 46.04.380,[5] and 46.04.460.[6] Therefore, respondent argues, Scott could only have been in possession of and driving the vehicle with the "permission" of Sutliff as contemplated by the policy's omnibus clause.

To the contrary, appellant contends that strict compliance with the automobile title and registration certificate statutes is not a prerequisite to the validity and viability of the conditional sales transaction as between Sutliff and Scott. Hence, appellant claims that, as a conditional vendee, Scott, at the time of the accident, was in exclusive possession and control of the vehicle pursuant to his contractual

---

assessed a five dollar penalty on the sixteenth day and one dollar additional for each day thereafter, but not to exceed fifteen dollars: *Provided,* That the penalty shall not apply to a registered dealer who has purchased the vehicle for the purpose of resale."

Repealed by Laws 1967, ch. 140 § 10.

[4] "RCW 46.04.270 Legal owner. 'Legal owner' means a mortgagee or owner of the legal title to a vehicle."

[5] "RCW 46.04.380 Owner. 'Owner' means a person who holds a title of ownership of a vehicle, or in the event the vehicle is subject to an agreement for the conditional sale or lease thereof with a right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then any such conditional vendee or lessee, or mortgagor having a lawful right of possession or use and control for a period of ten or more successive days."

[6] "RCW 46.04.460 Registered owner. 'Registered owner' means a person who holds a certificate of ownership of a vehicle, or in the event the vehicle is subject to an agreement for the conditional sale or lease thereof with a right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then any such conditional vendee or lessee, or mortgagor having a lawful right of possession or use and control for a period of ten or more successive days."

right and the incidents of ownership arising therefrom, rather than by virtue of any "permission" of Sutliff as that term was used in the omnibus clause.

The questions presented by the facts and countervailing arguments are ones of first impression in this state. They may be stated as follows: (1) Does a conditional vendee of an automobile have possession and use of the subject vehicle by grant of "permission" from the conditional vendor within the intended meaning of an ordinary or standard omnibus clause in the conditional vendor's automobile liability insurance policy covering the subject vehicle? (2) If the answer to the first question is no, does a lack of strict compliance with the automotive title and registration certificate statutes alter the situation and render the omnibus clause operative?

Under the standard or ordinary omnibus clause, as here employed, and under the pertinent title and registration statutes as they stood in this state at the time of the transaction here involved, we answer both questions in the negative.

At the outset it must be pointed out that the circumstances here presented are clearly distinguishable from those cases cited by respondent wherein the facts revealed that the negotiations between the prospective buyer and seller had not been completed and the buyer was in possession of the seller's vehicle for test purposes or pending completion of negotiations, i.e. Home v. Great Am. Ins. Co., 109 Ga. App. 24, 134 S.E.2d 865 (1964); Burton v. Lumbermens Mut. Cas. Co., 152 So. 2d 235 (La. 1963); Zurich Ins. Co. v. Continental Cas. Co., 239 Md. 421, 212 A.2d 96 (1965); Safeco Ins. Co. v. Northwestern Mut. Ins. Co., 142 Mont. 155, 382 P.2d 174 (1963); Peerless Ins. Co. v. Travelers Ins. Co., 104 N.H. 411, 188 A.2d 335 (1963); Klapps v. American Ins. Co., 26 Wis. 2d 664, 133 N.W.2d 248 (1965). Likewise distinguishable, is the case wherein, upon the basis of the facts, it was determined that the parties to the transaction did not, as a matter of fact, intend a conditional sale or that the incidents of ownership in the vehicle would

pass until the full purchase price had been paid. *Fidelity & Cas. Co. of New York v. Cohen,* 39 Misc. 2d 257, 240 N.Y.S.2d 783 (1963).

■ By way of further preface to a discussion of the reasons for our answers to the questions posed, we pause to observe that the term "permission", as used in connection with the usual or standard omnibus clause in an automobile liability policy, while having a somewhat flexible meaning, ordinarily connotes a right or power on the part of the insured to grant, withhold or control the privilege of use by the user of the subject vehicle. It follows then, that if one's use and operation of an automobile is to be within the meaning of an omnibus clause, which requires the permission of the insured, the insured must ordinarily have such an ownership interest in the vehicle as entitles him to possession and control thereof and thus to be in a position to give the required permission. *Didlake v. Standard Ins. Co.,* 195 F.2d 247 (10th Cir. 1952), 33 A.L.R.2d 941; *Farm Bureau Mut. Ins. Co. v. Emmons,* 122 Ind. App. 440, 104 N.E.2d 413 (1952); *Virginia Auto Mut. Ins. Co. v. Brillhart,* 187 Va. 336, 46 S.E.2d 377 (1948); *Nationwide Mut. Ins. Co. v. Cole,* 203 Va. 337, 124 S.E.2d 203 (1962); 72 A.L.R. 1390; Couch on Insurance 2d § 45:372, p. 378 (1964); 7 Am. Jur. 2d *Automobile Insurance* § 115, 428, 429; 45 C.J.S. *Insurance* § 829c(s)(b)(bb), 900.

We turn now to the first question posed above, that is, whether the conditional vendee of an automobile uses the same with the "permission" of an insured conditional vendor within the contemplation of the usual omnibus clause.

■ There is not a plethora of case authority upon the question. Our survey, however, convinces us that among the extant decisions which deal with the question, or with immediately related questions, there is a virtual unanimity of opinion, or tacit agreement, to the effect that a bona fide conditional vendee, in possession of an automobile under a valid, subsisting and ordinary conditional sales agreement, comes into possession of and uses the automobile by virtue of the incidents of ownership, flowing from his purchase

agreement rather than by virtue of any grant of "permission" from the conditional vendor as contemplated by the standard omnibus clause. The rationale most frequently advanced for this view is that where possession of the automobile has been transferred pursuant to the conditional sales agreement, the conditional vendor no longer owns the vehicle in such a sense as will enable him to give or withhold his consent to the use of the vehicle by the vendee, and that the vendor retains title for security purposes rather than for purposes of dominion over the vendee's possession and use of the car. *See*, for example, *United Fire & Cas. Co. v. Perez, supra; Nationwide Mut. Ins. Co. v. Cole, supra; Maryland Cas. Co. v. American Family Ins. Group*, 199 Kan. 373, 429 P.2d 931 (1967); *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 311 S.W.2d 41 (Mo. 1958); *Rush v. Smitherman*, 294 S.W.2d 873 (Tex. Civ. App. 1956); *Viator v. American Gen. Ins. Co.* 411 S.W.2d 762 (Tex. Civ. App. 1967); *Olin Mathieson Chem. Corp. v. Southwest Cas. Co.*, 149 F. Supp. 600 (W.D. Ark. 1957); *Standard Accident Ins. Co. v. Wilmans*, 214 F. Supp. 53 (E.D. Ark. 1963); *Garrett v. American Mut. Liab. Ins. Co.*, 261 F. Supp. 161 (E.D. Tenn. 1966); *Home Indem. Co. v. Bowers*, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668 (1952); and cases cited in Annot. 36 A.L.R.2d, Automobile liability insurance: conditional vendee of insured as within coverage of omnibus clause, 673 (1954).

We find no reason to adopt a different rule in this state. Accordingly, we have answered the first question in the negative.

We come then to the second question—whether or not a lack of strict compliance with our automobile title and registration statutes changes the situation and modifies application of the foregoing rule. This question arises because neither Sutliff nor Scott undertook to transfer title or registration documents for the vehicle involved until after the full purchase price had been paid on May 23rd, some 14 days after possession of the vehicle had passed and some 13 days after the accident giving rise to this litigation.

As counsel for the parties point out and as our review of the various decisions reveals, there has been a departure from a strict application of the rule or principle above referred to in some instances where title and registration documents have not been transferred with possession of the automobile in conditional sales transactions. This departure, however, has been in large measure limited to those jurisdictions which have automobile title and registration statutes declaring void, fraudulent or ineffectual any transfer of a vehicle without a concurrent transfer of the title and registration documents. The result of the departure is a conclusion that the ownership of the vehicle, with the right or power of granting or withholding permission to use, remains in the conditional vendor until such time as title and registration papers are actually transferred, ergo, the omnibus clause in a conditional vendor's liability policy is applicable during the interval. This conclusion is generally reached upon the theory that the particular title and registration statutes are mandatory, and render ineffectual and unconsummated any conditional sales transaction until such time as they are complied with. Based upon the provisions of their local statutes the following cases have adopted or accepted this approach. *Traders & Gen. Ins. Co. v. Pacific Employers Ins. Co.,* 130 Cal. App. 2d 158, 278 P.2d 493, (1955); *Maryland Cas. Co. v. American Family Ins. Group,* (Kan.), *supra, Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* (Mo.), *supra; Safeco Ins. Co. v. Northwestern Mut. Ins. Co.,* (Mont.), *supra; Turpin v. Standard Reliance Ins. Co. (Mutual),* 169 Neb. 233, 99 N.W.2d 26 (1959); *Eggerding v. Bicknell,* 20 N.J. 106, 118 A.2d 820 (1955); *Garlick v. McFarland,* 159 Ohio St. 539, 113 N.E.2d 92 (1953); *Clouse v. American Mut. Liab. Ins. Co.,* 344 F.2d 18 (4th Cir. 1965).

However, even in some states which have the strict type of certificate and registration statutes pointed to in the cases just cited, the courts have refused to permit a departure from the general rule. *United Fire & Cas. Co. v. Perez,* (Colo.) *supra; Rush v. Smitherman,* (Tex.) *supra; Feder-*

*ated Mut. Implement & Hardware Ins. Co. v. Rouse,* 133 F. Supp. 226 (N.D. Iowa 1955). And, in those jurisdictions with decided cases where the certification and registration statutes merely penalize noncompliance, rather than render a noncomplying transaction void or ineffectual, the courts have held the transaction valid as between the parties and applied the general rule whereby the elements of ownership pass to the conditional vendee with possession of the vehicle and under ordinary circumstances, render the insured vendor's omnibus clause inapplicable. *Olin Mathieson Chem. Corp. v. Southwest Cas. Co.,* (W.D. Ark.) *supra; House v. Hodges,* 227 Ark. 458, 299 S.W.2d 201 (1957); *Garrett v. American Mut. Liab. Ins. Co.,* (E.D. Tenn.) *supra; Hofslund v. Metropolitan Cas. Ins. Co. of New York,* 188 F.2d 188 (7th Cir. 1951).

A review of our automobile title and registration statutes, as they were at the time of the transaction here in question, as well as our decisions applying them, propels us to the conclusion that we fall into the category last referred to.

RCW 46.12.010 provides in pertinent part, that:

> It shall be unlawful for any person . . . to sell or transfer any vehicle without complying with all the provisions of this chapter relating to certificates of ownership and license registration of vehicles . . . .

RCW 46.12.100 and RCW 46.12.110, before their repeal in 1967, stated the duties of the parties to a sales transaction with respect to the title and registration certificates, and provided penalties in the event of noncompliance.

On the face of these statutes there is no indication of legislative intent to declare noncomplying transfers void. And, these statutes have not been so construed by this court.

In *Junkin v. Anderson,* 12 Wn.2d 58, 120 P.2d 548, 123 P.2d 759 (1941, 1942), a vendee in a sales transaction failed to properly acquire a certificate of ownership. This court held, with respect to RCW 46.12.010, at 74, that:

> The statute does not purport to make void transfers accomplished without compliance with the above men-

tioned provisions, nor does it even make the purchaser's act unlawful.

The validity of a sale as between the parties, where the certificate of registration has remained in the vendor's name, has been considered by a number of courts. There is a definite disagreement in the conclusions which have been reached, but the weight of authority construing statutes similar to ours supports our view that, as between the parties, the sale is valid.

Later, in *Gams v. Oberholtzer*, 50 Wn.2d 174, 310 P.2d 240 (1957) we considered the impact of a violation of the title and registration act upon the vicarious liability of a registered owner who was, in fact, not the true owner. After reviewing the authorities, we stated, at 179:

The general rule is that automobile registration statutes create only a public duty and do not render a violator either automatically liable to, or without recourse against, other drivers. . . .

. . . .

The legislature, in enacting RCW 46.12.210, authorized the imposition of a maximum penalty of a five thousand dollar fine and imprisonment for ten years on one convicted of misrepresenting a material fact on an application for a certificate of ownership of a motor vehicle. It is not our province to supplement this penalty with a punitive type of tort liability. We conclude that, since there was no causal connection between this appellant's violation of the statute and the accident which is the subject of this action, he was not precluded from introducing evidence to show that he was not the owner of the car.

■ Accordingly, and in line with these cases, we hold that where, as here, a bona fide conditional sale has been shown to exist between the parties to the transaction, and possession of the vehicle has passed to the vendee thereunder, the conditional vendee's possession and use of the vehicle is by virtue of the incidents of ownership flowing from the contract rather than by way of "permission" from the vendor within the meaning of the omnibus clause of the vendor's liability insurance policy even though there has been a lack of compliance with the title and registration

statute. The answer to the second question is, therefore, in the negative.

The respondent contends, however, that even if the conditional sale be valid as between the parties to it, it should not be held valid as against the interest of a third party.

■ Admittedly, the interest of an innocent third party enjoys a protected status in cases where noncompliance with the statutory requirements of a sales transaction has the effect of rendering *notice* inadequate. This is a matter commonly involved in secured transactions. However, the instant case is one involving a third party who suffered a tort. The fact that noncompliance with motor vehicle transfer and registration statutes prevented that third party from being notified of the sales transaction is, of course, of no moment and does not give rise to a protected status.

The respondent refers to the financial responsibility act of this state, RCW 46.29, and ascribes thereto a policy to give third parties injured on the highways an exceptional protected status as against vendors who have not complied with the pertinent vehicular title and registration statutes. We cannot agree.

The act imposes responsibility for injuries to third parties upon both the "operator" and the "owner" of a motor vehicle. RCW 46.29.110; *Rawson v. Department of Licenses,* 15 Wn.2d 364, 130 P.2d 876 (1942). However, by section 46.29.020 (1) of the act, it is provided that:

> The term "owner" as used in this chapter shall mean registered owner as defined in RCW 46.04.460.

RCW 46.04.460, in turn, defines registered owner as follows:

> "Registered owner" means a person who holds a certificate of ownership of a vehicle, *or in the event the vehicle is subject to an agreement for the conditional sale or* lease *thereof with a right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee* or lessee, or in the event a mortgagor of a vehicle is entitled to possession, *then any such conditional vendee* or lessee, or mortgagor *having a lawful right of*

*possession or use and control for a period of ten or more successive days.* (Italics ours.)

■ Under the conditional sales transaction here involved the conditional vendee, Scott, had the lawful right of possession or use and control of the automobile involved for a period in excess of 10 days. He, therefore, fell squarely within the foregoing definition and was both the "operator" and the "owner" within the contemplation of the financial responsibility act. The conditional vendor, Sutliff, holding only a security interest, does not come within the thrust of the act.

■ Finally, it is contended that appellant's agent, in advising Sutliff to continue his insurance coverage of the vehicle until the full purchase price was paid, and in retaining the premium for such coverage, waived appellant's right to assert, or estopped appellant from now asserting, that Sutliff was not the owner of the vehicle for the purpose of granting omnibus clause "permission" to its use by Scott. Again, we cannot agree.

It was reasonable for the appellant to advise Sutliff to continue his coverage during the short period that he held title to but not possession of the automobile. It had not been decided in this state whether a conditional vendee, and particularly one in a transaction where the transfer of vehicular possession had been accomplished without compliance with the title and registration statutes, would fall within the omnibus clause of the vendor's liability policy. Furthermore, if the vendor were to come into possession of the automobile, for whatever reason, during the 2-week period of the sales transaction, the insurance coverage would be desirable. Under these circumstances we do not deem the continuing coverage and/or the retention of premiums by appellant gave rise to a waiver or created an estoppel. *Cf. Whitney v. Employers' Indem. Corp.*, 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495 (1925); and *Peterson v. Universal Auto. Ins. Co.*, 53 Idaho 11, 20 P.2d 1016 (1933).

The summary judgment entered against appellant is reversed, and the cause is remanded for the granting of appellant's motion for summary judgment dismissing respondent's claim against appellant.

FINLEY, C. J., HILL, HUNTER, and NEILL, JJ., concur.

December 18, 1968. Petition for rehearing denied.

*Reported in 445 P.2d 612.