Barbara **MORGAN**, Administratrix of the Estate of Georgiann Morgan and Marcia Rust, Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Jan. 26, 1979.

Decided May 15, 1979.

Robert Burton Coonin of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for plaintiffs.

Stephen P. Casarino of Tybout & Redfearn, Wilmington, for defendant.

O'HARA, Judge.

Plaintiffs filed a complaint for a declaratory judgment, asserting their right to recover damages under an automobile insurance policy issued by defendant covering a 1969 Pontiac Tempest. The parties have filed cross-motions for summary judgment.

Plaintiff Morgan's decedent was fatally injured and plaintiff Rust severely injured on September 12, 1976 when the 1969 Pontiac automobile, driven by Eugene Sheets, collided with a freight train near Newark, Delaware. At the time of the collision the automobile was titled in the name of Catherine M. Russell and Helen S. Schmidt (Mrs. Schmidt is the mother of Ms. Russell). Prior to the collision, defendant had issued an insurance policy to Schmidt covering the automobile involved in the collision.

It appears that the Pontiac was originally acquired and titled by Schmidt and Russell jointly in May, 1975. At that time an insurance policy on the vehicle was taken out, in Schmidt's name, with the defendant. By July, 1976, Russell desired a more economical automobile and asked a friend (Tim Masterson of F & T Motors, since deceased) to dispose of the Pontiac and find another car of equal value for her. Accordingly, on July 17, 1976, Russell signed the title of the Pontiac over to F & T Motors, an automobile dealer, and gave custody of the Pontiac to Francis Glynn of F & T Motors. Russell failed to endorse the Pontiac's registration card before turning it over to Glynn. Furthermore, Russell did not inform defendant

of the transaction until December, 1976, when she transferred coverage to a Toyota automobile acquired at that time from F & T Motors. In the interim (July, 1976 to January, 1977) Russell drove vehicles owned by F & T Motors.

Meanwhile, the Pontiac was taken by Masterson and Russell to Donald Fenimore of Delaware Auto Auction to be sold. When the vehicle was not sold immediately, it was parked in front of the Russell/Schmidt residence. The Pontiac was sold by Fenimore to Lawrence O'Neal on August 16, 1976. Fenimore gave O'Neal the title, which had been signed over to O'Neal by an F & T Motors employee. Fenimore also claims to have notified the Division of Motor Vehicles of the transfer to O'Neal, but was unable to recall whether or not this took place prior to the September 12, 1976 accident. Sometime prior to September 12, O'Neal transferred the vehicle to Eugene Sheets.*

The parties agree that Russell failed to fully comply with the motor vehicle registration law in turning the Pontiac over to F & T Motors. Such a transfer is governed by 21 Del.C. § 2504(a), which reads in part:

> "If the transferee is a dealer, the owner upon transferring a registered vehicle shall properly endorse the registration card and deliver it together with the certificate of title properly assigned to the dealer who shall immediately report such transfer to the Department."

In addition to the failure to endorse the registration card, it is undisputed that Russell failed to notify defendant of the transaction and did not cancel her coverage.

Plaintiffs reason that the failure to comply with the registration statute invalidates the attempted sale, and that the failure to notify defendant insurer can be read as a desire to retain coverage and thus ownership, or at least an insurable interest. Under this theory, subsequent "purchasers" would be permissive users of the automobile through the implied consent of Russell, the owner.

Defendants are quick to cite two decisions of this Court which indicate that (1) the automobile registration card is not conclusive evidence of title, *Cammile v. Sanderson*, Del.Super., 101 A.2d 316 (1953), and (2) that title to a vehicle may pass despite non-compliance with the registration statutes, which are penal in nature and regulatory in character, *Commercial Credit Co. v. McNelly*, Del.Super., 171 A. 446 (1934). In the *Cammile* case the point is made that the Delaware registration statute is unlike those of some states which declare that title cannot pass without compliance or establish that the registration certificate is exclusive evidence of title. In Delaware, the registration card is merely prima facie evidence of ownership, and the Courts have permitted proof to the contrary, at least in cases of alleged fraud (*McNelly*) and to determine the real party in interest (*Cammile*).

However, as plaintiffs insist, these decisions were handed down prior to the enactment of 21 Del.C. § 2118, which requires specified insurance coverage for all automobiles registered in the State. Enforcement of this requirement is to be achieved through the registration procedure.

> "A motor vehicle registration shall not be issued or renewed for any vehicle not covered by a vehicle insurance policy meeting the requirements of this title." 21 Del.C. § 2118(j)(1).

To allow title to an automobile to change hands, in the absence of compliance with the registration statutes, would certainly inhibit full enforcement of the compulsory insurance law, with its goal of protecting injured persons from financially irresponsible negligent drivers.

Under the terms of the insurance policy issued to Schmidt, defendant agreed

> "to pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of (A) *bodily injury* sustained by other persons, . . . caused by accident aris-

---

* An affidavit of the Motor Vehicle Division filed by plaintiffs indicates that Russell and Schmidt were still listed as owners of the Pontiac in November, 1978.

ing out of the ownership, maintenance or use . . . of the *owned motor vehicle* . . ."

The definition of "insured" includes an omnibus clause providing coverage for

". . . (4) any other *person* while using the *owned motor vehicle*, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION . . ."

"Owned motor vehicle" refers to the vehicle described in the policy declarations (in this case, the 1969 Pontiac), while "non-owned automobile" is defined as an automobile

". . . not (1) owned by, (2) registered in the name of, or (3) furnished or available for the frequent or regular use of the named insured . . ."

The issue thus presented for decision is whether, given the insured's failure to comply with the registration statute and under the quoted policy provisions, defendant insurer can be compelled to satisfy the claims of plaintiff.

A leading case considering a similar issue is *Phoenix Insurance Company v. Guthiel*, N.Y.App., 2 N.Y.2d 584, 161 N.Y.S.2d 874, 141 N.E.2d 909 (1957), wherein the seller of an automobile neglected to remove the registration plates upon transfer of ownership, in violation of State law. Some twenty-three days after transfer, the vehicle was involved in a collision while being driven by the "buyer". The "seller's" insurer sought a judgment declaring the rights of the parties involved. The Court noted that under settled New York law, the seller, if sued in tort, would be estopped from denying ownership of the vehicle involved. However, the majority, interpreting policy provisions substantially similar to those at bar, held that the estoppel could not be carried over to the insurer.

"The ownership described in the policy is synonymous with actual title not judicially or legislatively imposed ownership depending upon proof of improper usage of license plates." *Phoenix Insurance Company v. Guthiel*, supra.

The Court found that the seller was not the owner, and that the use of the car was not under the seller's control within the omnibus clause of the insurance contract.

The dissenters in the *Phoenix* case asserted that the liability of one who allows the registration of an automobile to continue in his name is more a matter of "fastening responsibility for injuries" than estoppel. According to their view, the coverage under the insurance policy extended to any accident in which the vehicle was used or operated in such a way as to render the insured responsible. Included within the coverage would be use with permission of owner/seller. Judge Froessel observed in dissent that the majority holding would readily facilitate the evasion of the State's compulsory insurance law.

The conclusion reached by the majority is supported by the weight of authority. A typical holding is *Wallace v. Employers Casualty Company*, 9th Cir., 418 F.2d 1323 (1969), where a dealer/seller failed to properly sign over title to a vehicle. The Court held that the seller did not remain the owner of the vehicle on account of failure to comply with the Arizona registration statute, and that the omnibus clause of seller's liability policy did not provide coverage. See also *Beatty v. Western Pacific Insurance Company*, 74 Wash.2d 530, 445 P.2d 325 (1968) wherein the insurer of a conditional vendor holding certificate of registration as security was held not liable for the conditional buyer's alleged negligence under the omnibus clause or the State's financial responsibility act. A contrary view was taken in *Fidelity and Casualty Co. of New York v. Cohen*, N.Y.Supr., 39 Misc.2d 257, 240 N.Y.S.2d 783 (1963), where the Court, interpreting an ambiguous memorandum as well as the conduct of the parties, found that the seller did not intend to transfer title until the buyer completed payment in full. A similar result was reached in *Haynes v. Linder*, Mo.App., 323 S.W.2d 505 (1959), where a conditional buyer who fell behind in auto payments allowed his employer (as accommodation par-

ty on promissory note) to sell the vehicle to a third party who assumed the payments. Because there was no transfer to title, no notification of the insured, and the original buyer was aware of the arrangement, the Court found conscious permission and thus coverage on the original liability policy. Many cases finding coverage by the seller's insurer rely upon statutes which specifically render a transfer invalid pending compliance. See, for example, *Clouse v. American Mutual Liability Insurance Co.*, 4th Cir., 344 F.2d 18 (1965) (South Carolina law).

The tendency of Courts interpreting individual insurance policy clauses, under compulsory insurance statutes, has been toward liberal construction in order to achieve the public policy objective of universal coverage. 6C Appleman, *Insurance Law and Practice* (Buckley ed.), § 4300 (1979). However, coverage has not been extended where the interest of the buyer has vested to the point where permission becomes an idle thing. *Id.* § 4354, p. 55.

Under the circumstances presented, it is the Court's judgment that the defendant cannot, as a matter of law, be held liable under its policy with Schmidt, and plaintiffs' motion must be denied. As for defendant's motion, the record must be scrutinized for evidence of Russell's true intent. If there is any evidence that she intended to retain an interest in the automobile until she acquired a replacement vehicle, the motion must be denied. Reading the deposition of Ms. Russell, taken in the companion case of *Morgan, et al. v. Rago, et al.*, it is clear that she was unaware of the statutory procedure for transfer of title, and that she believed she had done everything legally required to relinquish ownership. After August 16, 1976, Russell no longer had any access to the Pontiac, and she was aware of the sale to O'Neal. Although she did not acquire the replacement Toyota until January, 1977, she was permitted to use vehicles owned by F & T Motors during this interval. Thus, it cannot be said that she intended the sale of the Pontiac to be conditioned on acquisition of a replacement, and the conditional sale cases are inapposite. It must be recalled that Ms. Russell was dealing with a friend who she obviously trusted to handle the details of transfer and provide her with a car of equal value. There is no evidence that the failure to notify the defendant was the product of anything but her desire to maintain the coverage in anticipation of acquiring a new automobile.

In sum, considering the record in a manner favoring plaintiffs, the facts point to the conclusion that Russell did not intend to retain an insurable interest in the Pontiac by failing to endorse her registration card. Thus, under the majority rule, her inadvertent failure to observe the proper procedure does not invalidate the intended sale to F & T Motors, and her insurer cannot be rendered liable. The motion of defendant for summary judgment is granted.

IT IS SO ORDERED.