COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:  May 5, 2020
Date Submitted:  April 29, 2020

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell
110 West Pine Street
PO Box 568
Georgetown, DE 19947

Gerry Gray, Esquire
Doroshow Pasquale Krawitz & Bhaya
14 Village Square Suite #1
Smyrna, DE 19977

Scott E. Chambers, Esquire
Gary E. Junge, Esquire
Schmittinger & Rodriguez, P.A.
414 South State Street
Dover, DE 19903

RE:  *Lisa Anderson v. Randell Lee Hill, et al.*
       C.A. No. 2018-0449-PWG

Dear Counsel:

Pending before me is a spouse's motion for partial summary judgment on her claim that her late husband's beneficiary change to his life insurance, in violation of the injunction imposed by statute preventing the transfer of property during divorce proceedings, is void.  Alternatively, the spouse requests payment to her of the defaulted beneficiary's share of the life insurance proceeds.  The spouse also seeks summary judgment on her claim that the transfer of an antique car by

her late husband is void because the purchaser failed to apply for title to the car within 30 days after purchase. In addition, there is a cross-motion seeking partial summary judgment against the spouse on her claims that the late husband lacked mental capacity when he executed his will and the beneficiary change. I recommend the Court deny the motion for partial summary judgment, finding that the life insurance beneficiary change and the transfer of the car are not void under the law, there are material facts in dispute and it is desirable to inquire more thoroughly into the facts to clarify the application of law to the circumstances. I also recommend that the Court deny the alternative motion seeking disbursement to the spouse of the defaulting beneficiary's share of insurance proceeds, without prejudice. Finally, I recommend the Court deny the cross-motion for partial summary judgment, finding it is desirable to inquire more thoroughly into the late husband's testamentary capacity. This is a final report.

## I. Factual Background

Plaintiff Lisa Anderson ("Anderson") and Charles Anderson ("Decedent") were married for over 30 years, from December 29, 1987 until Decedent's death on May 6, 2018. They owned a corporation, Anderson Enterprises, Inc., together, through which Decedent operated as an antique dealer and Anderson as a beautician. On March 5, 2018, Anderson obtained an ex parte protection from abuse order ("PFA") against Decedent, which was subsequently converted to a

2

consent order by agreement of the parties.[1]    On March 8, 2018, Decedent petitioned the Family Court for divorce, citing incompatibility and Anderson's misconduct.[2]  On March 12, 2018, Decedent executed a change of beneficiary form for his life insurance with Jackson National Insurance Company ("Jackson National"), removing Anderson as his beneficiary and naming his grandchildren, Defendants Joshua Abbott ("Abbott"), Christopher Short ("Short") and Taylor Grantham ("Grantham"), as beneficiaries.[3]    On March 16, 2018, Decedent executed a Last Will and Testament ("Will") devising his property to his daughters, Sheila Wilkins ("Wilkins") and Jamie Smith, and naming Wilkins as executrix of the Estate of Charles Anderson ("Estate").[4]    On May 6, 2018, Decedent, in violation of the PFA, entered the unoccupied marital home, set it on fire, and took up a position in an outbuilding with a long rifle; when police and firefighters arrived, Decedent committed suicide.[5]

## II.    Procedural Background

Anderson filed a complaint for rescission and equitable relief ("Complaint") on June 21, 2018, against Defendants Abbott, Short, Grantham, the Estate, and

---

[1] Docket Item ("D.I.") 1, ¶ 16; Ex. A.

[2] *Id.*, Ex. B.

[3] D.I. 53, Ex. H.

[4] D.I. 11, Ex. A.

[5] D.I. 1, ¶ 19.

Defendant Randall Hill ("Hill"), Decedent's cousin. Count I of the Complaint seeks rescission/cancellation of the change of life insurance beneficiary, claiming the life insurance policy ("Policy") was marital property and was transferred illegally in violation of 13 *Del.C.* §1509 and the PFA. Count II claims that Anderson has an equitable interest in the Policy since she paid the premiums with the understanding she would receive the life insurance benefit, and that the life insurance proceeds should be held in constructive trust. Count III seeks rescission of the beneficiary change because Decedent lacked mental competency. Count IV claims that Defendants will be unjustly enriched if Anderson does not receive the proceeds. Count V seeks rescission/cancellation of the transfer of the title of a 1937 Ford Coupe ("Car") by Decedent to Hill on March 7, 2018 as illegal and void.[6] Count VI seeks invalidation of the Will because Decedent lacked testamentary capacity. If the Will is not invalidated, as an alternative, Count VII seeks an elective share of the Estate for Anderson.

Hill's July 29, 2018 answer denied that the transfer of the Car's legal title was illegal. Hill claims he made a down payment of $3,000.00 in cash to Decedent in November of 2017 and paid $9,000.00 in cash on January 15, 2018, when

---

[6] Anderson and Decedent came into possession of the Car in 2007, which was titled in both names using the "&OR" designation. *Id.*, ¶21; Ex. D.

Decedent signed the title over to him.[7]  On March 7, 2018, a new certificate of title for the Car was issued to Hill.[8]  Hill asks that the transfer of the Car be declared valid and that Anderson be ordered to surrender possession of the Car to him.

On August 24, 2018, Jackson National filed an answer, counterclaim and cross claim requesting interpleader relief.[9]  The parties consented to interpleader relief, which was granted on April 16, 2019, and $108,944.05 in insurance proceeds was placed in escrow pending further order of the Court.[10]  Jackson National was released from all liability related to the Policy and all claims against Jackson National were dismissed.[11]

On September 9, 2018, Abbott, Short and the Estate (together "Defendants") filed an answer seeking dismissal of the Complaint and a counterclaim requesting an accounting by Anderson of Decedent's personal property; allowance of the executrix to access the marital home to marshal Estate assets; imposition of a constructive trust over Estate assets; and separate claims for the return of personal

---

[7] D.I. 7, ¶ 23.

[8] D.I. 53, Ex. K.  The previous certificate has the Decedent's signature and January 15, 2018 as the date of sale. *Id.,* Ex. J.

[9] D.I. 10.

[10] D.I. 53, at 5.

[11] D.I. 38; D.I. 39.

property of Abbott and Short kept at the marital home.[12] Anderson responded, addressing the Defendants' claims for specific items.[13]

On March 28, 2019, default judgment was entered against Grantham for her failure to respond or appear.[14]

On January 1, 2020, Anderson filed a motion for partial summary judgment ("Motion") on Counts I and V. She sought rescission of the life insurance change because it was void, illegal and in violation of the injunction against transferring property imposed under 13 *Del.C.* §1509 ("section 1509").[15] Alternatively, she claims that Grantham's share of the insurance proceeds should be disbursed to Anderson because a default judgment had been entered against Grantham. Anderson also argues that the transfer of the Car's title to Hill was void and illegal due to Hill's failure to apply for a new certificate of title within 30 days, in violation of 21 *Del.C.* §2503(a) ("section 2503(a)").

On February 13, 2020, Defendants responded and filed a cross-motion for partial summary judgment ("Cross-Motion").[16] They concede that the beneficiary change is in violation of section 1509 but assert that rescission of the change is not

---

[12] D.I. 11.

[13] D.I. 12.

[14] D.I. 35.

[15] D.I. 53, at 9-11.

[16] D.I. 59.

6

mandated by law, and the doctrine of unclean hands applies against Anderson, since she had already removed Decedent as beneficiary of her life insurance in August of 2017. Although they agree that Grantham has forfeited her rights to the proceeds by not participating in the defense of this matter, they argue insurance proceeds should not be disbursed until the Court considers all pending issues. The Cross-Motion seeks summary judgment in their favor on Counts III and VI in the Complaint, because Anderson failed to overcome the presumption that Decedent had testamentary capacity when he executed the Will and the beneficiary change.

In Hill's February 13, 2020 answering brief, he asked the Court to deny the Motion, asserting that his delay in filing the application for a new title did not void the transfer but, at worst, was voidable conduct.[17]

Anderson's March 9, 2020 reply brief claims the affirmative defense of unclean hands has been waived since it was not plead and it does not apply since her alleged misconduct is not directly related to claims in this litigation.[18] In addition, she asserts the Cross-Motion has not been properly moved, consistent with Court of Chancery Rule 7, and should not be addressed.

---

[17] D.I. 60, Defs.' Ans. Br. in Opp. of Mot. for Summ. J., at 4.

[18] D.I. 62, at 3, 5.

### III.    Standard of Review

Under Court of Chancery Rule 56, the court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[19]  The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[20]  Evidence must be viewed "in the light most favorable to the non-moving party."[21]  Summary judgment may not be granted if there is a "reasonable indication that a material fact is in dispute," or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[22]

---

[19] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[20] *Wagamon*, 2012 WL 1388847, at *2; *Lundeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *5 (Del. Super. Aug. 31, 2006).

[21] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)); *CelestialRX Investments, LLC v. Krivulka*, 2017 WL 416990, at *12 (Del. Ch. Jan. 31, 2017) (citation omitted); *Erickson v. Centennial Beauregard Cellular, LLC*, 2003 WL 1878583, at *2 (Del. Ch. Apr. 11, 2003).

[22] *Cf. Williams*, 671 A.2d at 1388-89 (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962)); *Hendry v. Hendry*, 2006 WL 1565254, at *7 (Del. Ch. May 26, 2006) (citation omitted); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

### IV.    Analysis

I consider four issues related to the Motion and the Cross-Motion:   (1) whether the beneficiary change to Decedent's life insurance policy should be rescinded as void and in violation of section 1509; or alternatively, (2) whether Grantham's share of the insurance proceeds should immediately be disbursed to Anderson since Grantham has defaulted; (3) whether the transfer of the Car's title to Hill was void due to Hill's failure to apply for a new certificate of title within 30 days, in violation of section 2503(a); and (4) whether summary judgment should be granted against Anderson's claim that Decedent lacked the mental capacity to make the beneficiary change and to execute the Will.

### a) Is Decedent's life insurance beneficiary change void under 13 *Del.C.* §1509?

First, I address whether Decedent's beneficiary change for his Policy was, as argued by Anderson, in violation of section 1509, illegal and void.  Section 1509 provides that upon the filing of a petition for divorce, the parties are enjoined from "[t]ransferring, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life."[23]  This preliminary injunction does not, however, preclude a party from "taking any action which will affect the disposition of property as a result of such party's death," with

---

[23] 13 *Del.C.* §1509(a)(1).

that action becoming effective upon written notice to the other party.[24] Section 1509 further states that if a party dies before entry of a final decree of divorce, any action taken after the section 1509 injunction was issued is "voidable, to the extent deemed appropriate, in the discretion of a court of competent jurisdiction, unless the parties have otherwise agreed in writing."[25]

Void and voidable acts have often been distinguished in the context of actions by a corporate board – void acts are acts that a board "has no implicit or explicit authority to undertake or those acts that are fundamentally contrary to public policy," and include "fraud, gift, waste or *ultra vires* acts."[26] Voidable acts are susceptible to cure because they can be lawfully accomplished if done "in the appropriate manner."[27]

It is undisputed that Decedent's beneficiary change violated section 1509 because it occurred four days after he filed for divorce. Considering the distinction between void and voidable, a beneficiary change in violation of section 1509 is not void but voidable – since it can be lawfully accomplished if done in the appropriate

---

[24] 13 *Del.C.* §1509(a)(1)(a).

[25] 13 *Del.C.* §1509(a)(1)(b).

[26] *Solomon v. Armstrong*, 747 A.2d 1098, 1114 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000); *see also Rainbow Mountain, Inc. v. Begeman*, 2017 WL 1097143, at *9 (Del. Ch. Mar. 23, 2017).

[27] *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 896 (Del. Ch. 1999); *Gilliland v. St. Joseph's at Providence Creek*, 2006 WL 258259, at *5 (Del. Super. Jan. 27, 2006) (citation omitted).

manner, i.e., when proper notice is provided to the other party.[28]   Further, since

Decedent died before the final divorce decree was entered and there was no written

agreement between the parties, section 1509, by its plain language, provides an

action taken in violation of that section is voidable.   Therefore, it is not void, but

voidable, in the discretion of a court of competent jurisdiction.   This Court is a

court of competent jurisdiction related to this matter.[29]

Anderson cites Family Court cases in which corrective action for violations

of section 1509 was imposed, which included the restoration of the original

beneficiary when a spouse changed his life insurance beneficiary in violation of

section 1509 in some cases.   However, it appears those decisions were based on

Family Court's analysis of a number of factors, including whether the life

insurance policy was marital property, the cash surrender value of the policy, and

whether the life insurance policy would serve as a "back up" source for alimony or

---

[28] *See* 13 *Del.C.* §1509(d).

[29] Family Court has exclusive jurisdiction over "the division and distribution of marital property and marital debts and any other matters incident to a . . . divorce." 13 *Del. C.* §507.  If a party dies before a final divorce decree is entered, the divorce proceedings are abated and Family Court's authority to resolve ancillary matters is eliminated. *See Angelli v. Sherway*, 560 A.2d 1028, 1033 (Del. 1989).   There are no pending Family Court proceedings related to this matter.  Further, Family Court's jurisdiction is limited to the adjudication of the rights and claims arising between spouses, and it "has no power to hear or determine claims of third parties against [spouses] or their property." *Sklut v. Markessinis,* 1997 WL 297083, at *3 (Del. Fam. Feb. 28, 1997) (citing *Joseph B.P. v. Kathleen M.P.*, 469 A.2d 800, 802 (Del. 1983)).   The Court of Chancery has authority to grant relief outside of Family Court's jurisdiction if related to Chancery's equitable

other support payments, among other considerations.[30] Here, there is no option of reinstating Anderson as beneficiary, since Jackson National has already paid out death benefits on the Policy.

I also consider whether Decedent's life insurance proceeds would be considered a marital asset. The Delaware Supreme Court in *Robbins v. Alexander* considered the effect of a section 1509 injunction in the context of the deceased spouse's estate, and concluded that the "routine injunction issued under 13 *Del.C.* §1509(a)(1) is designed principally to prevent the transfer of marital assets which might be distributed to the opposite party or any assets which might be looked to . .

---

jurisdiction or estate matters. *See generally In re Estate of Farren*, 131 A.3d 817, 830-32 (Del. Ch. 2016); *Sklut*, 1997 WL 297083, at *3.

[30] *Cf. M. E. F. v. M. M. F.,* 2016 WL 6138660, at *1 (Del. Fam. Oct. 17, 2016) (Court declined to order wife's reinstatement as life insurance beneficiary even though husband changed his beneficiary in violation of §1509, finding husband's alimony obligations were otherwise secured); *M.R. v. B.R.*, 2012 WL 4863000, at *2 (Del. Fam. May 23, 2012) (Court found husband in contempt of §1509, and assessed him for the cash value of the policy that was cashed out, and ordered him to maintain wife on another life insurance policy so long as there was an alimony obligation); *F.A. v. D.A.,* 2007 WL 1544429, at *1 (Del. Fam. Mar. 8, 2007) (Court ordered reinstatement of wife as beneficiary of husband's life insurance policy and that the parties share the cost of the policy equally); *Jones v. C. Jones P.,* 789 A.2d 598, 604 (Del. Fam. 2001) (Court left husband's beneficiary change to his 401(k) plan unaltered based on federal law, but treated it as marital property); *In re Marriage of Ryan*, 1994 WL 811748, at *4 (Del. Fam. Feb. 10, 1994) (after husband allowed life insurance policies with his wife designated as beneficiary to lapse in violation of §1509, Court directed husband to secure equivalent policies naming his children as beneficiaries until youngest child reached majority); *Brice v. Brice*, 1992 WL 69321, at *1 (Del. Fam. Jan. 13, 1992) (Court ordered wife's restoration as life insurance beneficiary but did not hold husband in contempt of §1509); *Cardivano v. Bittenbender*, 1989 WL 169004, at *7 (Del. Fam. Dec. 13, 1989)

12

. or to satisfy any other order which might have been issued" by Family Court, and "was not designed to prevent litigants from disposing of assets which are not potentially involved in [Family Court litigation]."[31] Here, the life insurance proceeds from the Policy are not marital assets. A spouse designated as a life insurance beneficiary has a "mere expectation" of the benefit until it vests, which does not occur until the other spouse's death.[32] The Policy vested at Decedent's death and although they were not divorced at that time, Anderson was no longer the beneficiary. What may be marital property is the cash surrender value of the Policy if it was purchased from marital assets.[33] Decedent's Policy had a cash surrender value of $9,183.73 as of January 1, 2018, shortly before Decedent's death.[34] However, there are questions concerning the source of payment for

(Court found husband violated §1509 and directed him to designate his children as his life insurance beneficiaries).

[31] 599 A.2d 414 (Del. 1991). In *Robbins*, the husband filed for divorce, divested himself of his house, which was non-marital property, and died before the final divorce decree was entered. *Id.* The Supreme Court affirmed the Court of Chancery's refusal to invalidate the transfer of non-marital property even though it occurred while the §1509 injunction was in place. *Id.*

[32] *See generally In re Estate of C.R.P.,* 2015 WL 3613561, at *5 (Del. Fam. June 9, 2015).

[33] *See generally In re Marriage of A.J.H., Jr.,* 2002 WL 31454020, at *1 (Del. Fam. May 1, 2002); *Tuminaro v. Tuminaro*, 1999 WL 689260, at *5 (Del. Fam. Apr. 30, 1999); *but see In re Marriage of Tweedale v. Tweedale*, 1996 WL 861492, at *7 (Del. Fam. Dec. 17, 1996), *aff'd,* 703 A.2d 645 (Del. 1997) (Court found husband's life insurance policy was not marital property since marital contribution to the policy was *de minimus* and husband was ordered to reimburse wife for her share of marital contribution).

[34] D.I. 53, at 4.

13

Decedent's and Anderson's life insurance policies during the marriage; the value and benefit of Anderson's policy; and Decedent and Anderson's agreement, if any, about their respective life insurance policies.[35]  In addition, Anderson's Count II, in which she claims an equitable interest in the Policy and seeks to have the life insurance proceeds held in constructive trust for her, remains to be addressed. Accordingly, I find Anderson has not demonstrated that there are no material factual issues in dispute and that she is entitled to judgment as a matter of law due to Decedent's violation of section 1509, and I desire to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.

---

[35] Defendants assert that the doctrine of unclean hands would apply to prevent Anderson from receiving Decedent's life insurance proceeds. D.I. 59, at 8.  Anderson argues that Defendants failed to assert the affirmative defense of unclean hands in their answer, and have not moved to amend their answer, so that affirmative defense is waived, and also that the unclean hands doctrine does not apply because Anderson's beneficiary change for her life insurance does not directly relate to claim that Decedent's beneficiary change violated §1509. D.I. 62, at 3, 5.  Court of Chancery Rule 8(c) requires a defendant to raise an affirmative defense, like unclean hands, in a responsive pleading.  Courts have generally held that the failure "to raise an affirmative defense may constitute a waiver, if that defense is not raised in a *timely* fashion." *Abdi v. NVR, Inc.*, 2007 WL 2363675, n. 13 (Del. Super. Aug. 17, 2007), *aff'd*, 945 A.2d 1167 (Del. 2008) (citing *Ratcliffe v. Fletcher*, 690 A.2d 466 (Del. 1996)).  This Court has found that "a defendant is required to plead affirmative defenses in her answer but, if the defendant fails to do so, the Court has discretion to allow the defendant to amend her answer" so long as "the amendment does not unduly surprise or prejudice the plaintiff." *Knutkowski v. Cross*, 2011 WL 6820335, at *2 (Del. Ch. Dec. 22, 2011).  Here, unclean hands was not plead in Defendants' answer, nor is there a motion before the Court to amend Defendants' answer, so that defense is waived unless an amendment is subsequently sought and allowed.

Therefore, I recommend the Court deny Anderson's motion for partial summary judgment on Count I of her Complaint.

### b) Should Grantham's share of insurance proceeds be immediately disbursed to Anderson?

Next, I consider whether Grantham's share of the insurance proceeds should be immediately disbursed to Anderson because a default judgment was entered against Grantham. Anderson argues that Grantham's share of the insurance proceeds should be disbursed to her and Defendants have no claim on Grantham's share. Defendants respond that funds should not be disbursed until the Court considers all pending issues. Default judgment was granted against Grantham, on March 28, 2019, for her failure to appear in the action, but the damages to be assessed against Grantham were not specified. The Court has the authority to conduct hearings to determine the amount of damages or to investigate what is needed to carry the default judgment "into effect."[36] I find it is premature, at this juncture, to disburse the insurance proceeds to Anderson, and recommend the Court deny Anderson's motion for the disbursal of Grantham's share of the insurance proceeds to her, without prejudice.

### c) Is the transfer of the Car's title to Hill void due to Hill's violation of 21 *Del.C.* §2503(a)?

---

[36] Ct. Ch. R. 55(b).

Another issue is whether, as Anderson asserts, the transfer of the Car's title to Hill was void and illegal because Hill violated section 2503(a) by failing to apply for a new certificate of title within 30 days, and the Court cannot enforce an illegal contract.[37]  Hill responds the transfer was, at worst, voidable conduct that was cured when the new certificate of title was issued.[38]

Section 2503(a) provides, in pertinent part:

(a) The transferee of a Delaware registered vehicle shall make application for a new certificate of title immediately following purchase, but in no case more than 30 days after purchase of said vehicle. If due to extraordinary circumstances the purchaser is unable to apply for a certificate of title within 30 days of the purchase date, the Director [of the Division of Motor Vehicles ("DMV")], in the

---

[37] The claim regarding the ownership of the Car was originally brought as a replevin action by Hill in the Court of Common Pleas, which was subsequently dismissed by stipulation and became part of the pleadings in this case. D.I. 53, at 2.  This Court does not generally have equitable jurisdiction over replevin actions because there is an adequate remedy at law. *See generally In re Markel*, 254 A.2d 236, 239 (Del. 1969); *Girard Bank of Delaware, N.A. v. Taubler*, 1983 WL 142521, at *1 (Del. Ch. Dec. 20, 1983).  However, I find there is subject matter jurisdiction over this claim through the clean-up doctrine in order to avoid piecemeal litigation. *Cf. In re Morrow Park Holding LLC*, 2018 WL 2123280, at *2 (Del. Ch. Mar. 28, 2018); *Organovo Holdings, Inc. v. Dimitrov*, 2017 WL 2417917, at *8 (Del. Ch. June 5, 2017), *judgment entered,* (Del. Ch. 2017); *Kraft v. WisdomTree Investments, Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

[38] Hill also argues the "illegal act" under § 2503(a) is to operate the transferred vehicle without the proper title, registration, inspection or license plate, which Hill has not done since the vehicle remains in Anderson's possession. D.I. 60.  Section 2503(a) imposes dual obligations on a transferee of a Delaware registered vehicle: (1) to apply for a new certificate of title within 30 days after purchase, and (2) to apply for title transfer, obtain registration and inspection of the vehicle before operating, or permitting the operation of, the vehicle on a highway.  The failure to complete either obligation is a violation of §2503(a).

> Director's discretion and for good cause shown, may grant an extension of time within which the purchaser must do so.[39]

"Under Delaware laws regulating ownership of a motor vehicle, an owner is "a person who holds legal title of a vehicle . . ."[40]  "[P]roof that a motor vehicle is registered by a Certificate of Title in a person's name creates a *prima facie* case of ownership," although that presumption is rebuttable.[41]  The application to obtain a new certificate of title is considered "a function owed to the government" and, contrary to Anderson's assertion, car sales have not been automatically invalidated when proper procedures for transferring a car's title were not observed.[42]

Here, the certificate of title for the Car remained in Decedent and/or Anderson's name until March 7, 2018, creating a presumption of their ownership until that time, which is rebuttable.  For purposes of the Motion, the central question is when legal title to the Car passed.  Hill claims that ownership of the Car transferred to him on January 15, 2018 – when he paid for the Car in full and Decedent signed the title over to him.  Anderson disputes that Hill paid for the

---

[39] 21 *Del.C.* §2503(a).

[40] *Nationwide Gen. Ins. Co. v. Mendes*, 2007 WL 1748651, at *2 (Del. Super. May 31, 2007) (citation omitted); *Liberty Mut. Ins. Co. v. Devlin*, 1998 WL 283424, at *4 (Del. Super. Mar. 26, 1998).

[41] *Liberty Mut. Ins. Co.*, 1998 WL 283424, at *4 (citation omitted).

[42] *Cf. id.* at *5 (citing *Morgan v. State Farm Mut. Auto. Ins. Co.*, 402 A.2d 1211 (Del. Super. 1979).

Car.[43] When DMV issued the new certificate of title seven weeks after the transfer occurred, it had authority under section 2503(a) to remedy the lateness of the application. And, the penalty for the failure to apply for a new certificate of title within 30 days after transfer is not voiding the sale contract, but $35.00.[44] I decline to conclude that the failure to obtain a new certificate of title within 30 days after the Car sale voided the sale. And, material factual issues are in dispute related to Hill's purchase of the Car. Therefore, I recommend the Court deny the motion for summary judgment on the claim that the Car purchase was void based on section 2503(a).

### d) Should summary judgment be granted against Anderson's claim that Decedent lacked the mental capacity to make the beneficiary change and to execute the Will?

Defendants' Cross-Motion seeks summary judgment in their favor on Counts III and VI of the Complaint because Anderson has failed to overcome the presumption that Decedent had testamentary capacity when he executed the Will and the beneficiary change.[45]

---

[43] D.I. 53, n. 2.

[44] 21 *Del.C.* §2508 (penalty fee for issuance of a new certificate of title when the application is received more than 30 days after transfer is $35.00).

[45] Anderson claims the Cross-Motion has not been properly moved under Court of Chancery Rule 7 and should not be addressed. Defendants brought the Cross-Motion as a part of their answering brief and not as a separate motion, but the Cross-Motion is distinguishable from Defendants' other responses, states its grounds with particularity and the relief requested, and Anderson addressed the Cross-Motion in her reply brief.

"Under Delaware law, all will contests start with the presumption that a testator had the capacity to make a will at the time it was made."[46] "The party challenging testamentary capacity bears the burden of proving that the decedent was legally incapable of executing a valid will."[47] Testamentary capacity "has been defined to mean that one who makes a will must, at the time of execution, be capable of exercising thought, reflection and judgment, and must know what he is doing and how he is disposing of his property."[48] The state or condition of a testator's mind "is a fact to be proved [by evidence] like any other fact in the case."[49]

Here, Defendants point to the absence of evidence to support Anderson's claim and the deposition testimony of the attorney who prepared the Will, who

---

Since the manner in which the Cross-Motion was brought did not cause confusion to the Court, prejudice to Anderson, or unnecessary expenditures of time and effort, I will consider the merits of the Cross-Motion. *See generally First State Orthopaedics, P.A. v. Liberty Mut. Ins. Co.*, 2020 WL 764149, at *4 (Del. Super. Feb. 13, 2020) (construing Rule 7(b), when read in conjunction with Rule 1, to permit the Court to consider the merits of Defendants' Motion that was not noticed); *Loppert v. WindsorTech, Inc.,* 2004 WL 3092338, at *1 (Del. Ch. Sept. 21, 2004).

[46] *In re Justison*, 2005 WL 217035, at *6 (Del. Ch. Jan. 21, 2005); *see also In re Baran*, 2017 WL 2491517, at *5 (Del. Ch. May 26, 2017); *In re Langmeier*, 466 A.2d 386, 389 (Del. Ch. 1983).

[47] *In re Justison*, 2005 WL 217035, at *6; *see also In re Baran*, 2017 WL 2491517, at *5; *In re Langmeier*, 466 A.2d at 389.

[48] *In re Langmeier*, 466 A.2d at 402; *In re Baran*, 2017 WL 2491517, at *6; *In re Justison*, 2005 WL 217035, at *6.

[49] *In re Langmeier*, 466 A.2d at 401-02 (citation omitted).

characterized Decedent as having full mental capacity when executing the Will.[50]

Under Court of Chancery Rule 9(b), the condition of a person's mind may be averred generally. The Complaint alleges Decedent's mental state had deteriorated and at the time the Will was executed, Decedent suffered from mental illness "characterized in large part by paranoia" and lacked mental capacity to execute a Will.[51] For purpose of the Cross-Motion, the evidence is viewed in the light most favorable to the non-moving party, Anderson. I find Defendants have not met their burden and Anderson's general averments about Decedent's mental state are sufficient to survive a motion for summary judgment. I conclude there are material factual issues in dispute and I desire to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. Therefore, I recommend that the Cross-Motion be denied.

## V. Conclusion

Based upon the reasons set forth above, I recommend the Court deny Anderson's motion for partial summary judgment, and her alternative motion seeking disbursement to the spouse of the defaulting beneficiary's share of insurance proceeds, without prejudice. I also recommend the Court deny the cross-motion for partial summary judgment filed by Defendants Short, Abbott and the

---

[50] D.I. 59, at 14-15.

[51] D.I. 1, ¶¶ 14-19, 59, 60.

Estate.  This is a Master's final report and exceptions may be taken under Court of

Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery
